UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-82041-CIV-MIDDLEBROOKS/REINHART

BRENDA LAPLATTE,

                          Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                          Defendant.
_____/

## REPORT AND RECOMMENDATION REGARDING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 28, 29)

Currently before the Court are the parties' cross-motions for summary judgment (ECF Nos. 28, 29), which the Honorable Donald M. Middlebrooks has referred to me for appropriate disposition. The issue is whether the record contains substantial evidence to support the denial of disability benefits to Plaintiff Brenda LaPlatte.

For the reasons stated below, I find that there is substantial evidence to support the denial of disability benefits to Ms. LaPlatte. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (ECF No. 28) be **DENIED** and that Defendant's Motion for Summary Judgment (ECF No. 29) be **GRANTED**.[1]

---

[1] On October 13, 2022, I recommended that Ms. LaPlatte's Complaint be dismissed without prejudice for lack of prosecution because she failed to file her motion for

## BACKGROUND

On August 31, 2019, Ms. LaPlatte filed an application for disability insurance benefits and supplemental security income, alleging disability beginning July 31, 2019. R. 21.[2] Ms. LaPlatte had a hearing before an Administrative Law Judge (ALJ) on March 25, 2021. *Id.* The ALJ denied Ms. LaPlatte's application for benefits in a decision dated May 4, 2021 (R. 21-30), and the Appeals Council denied her request for review on September 2, 2021. R. 7-10.

The record contains the following facts adduced from Ms. LaPlatte's testimony at the hearing, her treatment records, the opinions of state agency consultants, and the testimony of a vocational expert.

*Ms. LaPlatte's Testimony*

At the time of her hearing on March 25, 2021, Ms. LaPlatte was 51 years old. R. 53. Ms. LaPlatte had a twelfth-grade education, and her work history was primarily as a bookkeeper. R. 41. Before being terminated from her bookkeeping position in 2019, Ms. LaPlatte was frequently absent from work because she was "having a lot of physical body pain," she was depressed, and she "was having a lot of migraine headaches." R. 45-47. Ms. LaPlatte testified that she suffers from sleep

---

summary judgment by the deadline, which I had already extended, and she failed to respond to my Order to Show Cause. ECF Nos. 20, 21. Judge Middlebrooks adopted my recommendation and dismissed the Complaint without prejudice, but gave Plaintiff one week to file an Amended Complaint. ECF No. 23. Plaintiff timely filed an Amended Complaint (ECF No. 24), and thereafter she filed the instant motion for summary judgment within the Court's deadline.

[2] This citation is to the record of the administrative proceeding filed at ECF No. 12.

apnea, irritable bowel syndrome, acid reflux, and hernias. R. 47-49. She had abdominal reconstruction to repair the hernias in 2020, but she still experiences pain. R. 49. Ms. LaPlatte also experiences pain when sitting upright and she has had problems with her right arm, hand, and shoulder. R. 50.

*Medical Records*

Between 2017 and 2019, Ms. LaPlatte had frequent doctors' appointments and her treatment records reveal that her primary complaints were right shoulder pain, lower abdomen discomfort, swelling in her ankles, chest congestion, and difficulty sleeping. (Ex. 1F at 13, 42, 50, 76, 81, 95, 103, 110, 113, 116, 121, 128, 134). Her medical records indicate a history of mild intermittent asthma "without complication" (Ex. 1F at 105, 119, 132, 135), and "uncontrolled type 2 diabetes mellitus hyperosmolarity without coma [and] without long-term current use of insulin" (Ex. 1F/105, 2F/13, 17F/25, 32F/9).

In August 2019, Ms. LaPlatte sought medical attention for recurrent abdominal and pelvic pain (Ex. 1F/13-14). Medical imaging of her abdomen ultimately revealed an abnormal appearance on the upper pole of her left kidney that was deemed highly suspicious for transitional cell cancer (Ex. 1F/20; 4F/87-88; 8F/2). Subsequent testing ultimately confirmed the presence of non-invasive papillary urothelial carcinoma of the left renal pelvis (Ex. 6F/5, 11F/26). Ms. LaPlatte underwent a left adrenalectomy and nephron-uretectomy with bladder cuff on September 25, 2019 (Ex. 1F/6, 6F/5). A CT PET scan was negative for metastatic disease (Ex. 17F/22). By February 6, 2020, Ms. LaPlatte's treatment notes reveal

that she "remain[ed] without evidence of disease recurrence" (Ex. 33F/9). In May 2020, Ms. LaPlatte underwent abdominal wall reconstruction surgery following a hernia repair (Ex. 32F/6).

At a December 2019 examination by a state medical consultant (Dr. Kanner), Ms. LaPlatte reported having a history of migraine headaches, kidney cancer, hernias, irritable bowel syndrome, depression, low back pain, and degenerative joint disease (Ex. 13F/2-3). Nevertheless, Dr. Kanner concluded that Ms. LaPlatte's "physical exam was entirely within normal limits." *Id.* at 5.

*ALJ's Decision dated May 4, 2021*

The ALJ found that Ms. LaPlatte had the following severe impairments: asthma, diabetes mellitus, kidney, adrenal glands, or uterine cancer (left renal pelvis papillary urothelial carcinoma), migraines/headaches, and obesity R. 23.[3] Upon considering Ms. LaPlatte's claims, the medical records, and opinions of the medical consultants, the ALJ concluded that none of Ms. LaPlatte's severe physical impairments met the level of severity required by the SSA's Listing of Impairments so as to render her disabled. R. 25-26.

---

[3] The ALJ considered Ms. LaPlatte's mental functioning using the Paragraph B criteria in the SSA's Listing of Impairments and concluded that any mental impairments were non-severe. R. 24. The ALJ acknowledged Ms. LaPlatte's testimony about her depression, but found that "her mental status evaluations during the period in question have repeatedly noted normal psychological findings." R. 24 citing Ex. 2F/13, 29; 4F/49; 6F/12; 11F/25; 15F/10; 22F/26; 24F/49, 104; 26F/12; 32F/9. Moreover, the ALJ observed that "on a number of occasions" Ms. LaPlatte failed to report "any negative psychological symptoms" (*id.* citing 6F/5; 11F/9; 17F/18; 21F/10), and that "there is no indication in the record that she has received any treatment from a mental health care specialist." R. 24.

The ALJ noted that the September 2019 surgery performed on Ms. LaPlatte's kidney "appears to have resolved" her cancer and that most of her physical examinations have revealed normal diagnostic findings, "especially with respect to her genito-urinary function." R. 27 citing Ex. 2F/13, 29; 15F/3, 7, 10; 17F/27; 22F/10, 44; 24F/49, 55; 26F/8-19; 32F/56, 68; 33F/14, 35, 72.

The ALJ further noted that Ms. LaPlatte uses an inhaler and nebulizer to manage her asthma symptoms (R. 27 citing Ex. 1F/14, 78; 5F/8; 1F/3; 17F/3, 6), that she does not appear to have had an asthmatic attack since August 2016 (*id.* citing Ex. 4F/27), and that her physical examinations reveal that she possessed normal respiratory diagnostic results (*id.* citing Ex. C1F/13, 39; C4F/8-9; C11F/1-2, 7-8, 12-14).

With regard to Ms. LaPlatte's diabetes, the ALJ found that despite it being characterized as "uncontrolled" in the treatment reords, it appears that Ms. LaPlatte is able "to manage her condition on her prescribed medication and diet." R. 28 citing Ex. 8F/2; 17F/17; 22F/12; 24F/50, 160). "Indeed, the record does not indicate that [Ms. LaPlatte] has had had any instances of diabetic urgencies or emergency room visits" and "[s]he has also not developed any significant complications or symptoms, such as retinopathy, neuropathy, or urinary urgency." R. 28.

With regard to Ms. LaPlatte's history of migraine headaches, the ALJ noted that they "appear to manifest on an intermittent basis, with there being a number of occasions in the record when she denied experiencing any headaches whatsoever." R. 28 citing Ex. 11F/9; 17F/7; 22F/43; 24F/62; 26F/22; 32F/67. "Indeed, the vast majority

of the mental status evaluations in the record document completely normal neurological findings." *Id.* citing Ex. 2F/13, 29; 15F/3, 7, 10; 17F/27; 22F/10, 44; 24F/49, 55; 26F/8-19; 32F/56, 68; 33F/14, 35, 72.

The ALJ considered Ms. LaPlatte's physical symptoms and the extent to which she claims her impairments restrict her abilities, however the ALJ concluded that Ms. LaPlatte's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 26. For example, the ALJ found that Ms. LaPlatte's daily activities, as listed in her Function Report dated September 2020, include dressing and bathing herself, and demonstrate that she is "generally able to manage her personal care and hygiene independently." R. 27 (citing Ex. 20E/2-12). The ALJ also noted Ms. LaPlatte's ability to prepare simple meals and do household chores, including cleaning, laundry, and washing dishes, as well as her ability to drive, go out alone, and shop in stores independently. *Id.* The ALJ concluded that these activities "are inconsistent with the extent of [Ms. LaPlatte's] alleged limitations" and "suggest that [her] impairments are not as restrictive as alleged." *Id.*

The ALJ found persuasive the opinions of the non-examining state consultants (Dr. Bixler and Dr. Krishnamurthy), who determined that Ms. LaPlatte could perform a full range of light work (with only some limitations as to extreme temperatures, respiratory irritants, and hazardous conditions). R. 29. The ALJ found the opinions of these medical consultants to be "entirely consistent with the medical evidence," which included a "significant number of relatively unremarkable

physical examinations." R. 29 citing Ex. 2F/13, 29; 15F/3, 7, 10; 17F/27; 22F/10, 44; 24F/49, 55; 26F/8-19; 32F/56, 68; 33F/14, 35, 72. The ALJ also found that the consultants' opinions of Ms. LaPlatte's ability to perform light work "mirror[ed] [her] daily activities." R. 29.

The ALJ concluded that Ms. LaPlatte has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for the following restrictions: she should avoid concentrated exposure to extreme cold, extreme heat, and respiratory irritants such as dust, odors, gases, fumes. She should also avoid concentrated exposure to hazards, including working in high exposed places and proximity to moving vehicles and mechanical parts. R. 26. Accordingly, the ALJ determined that Ms. LaPlatte was not disabled and that she could perform her past relevant work as a bookkeeper because the requirements for that job did not implicate any of Ms. LaPlatte's restrictions. R. 29.

*Vocational Expert Testimony*

The vocational expert testified that Ms. LaPlatte's past relevant work as a bookkeeper would fall within the classification of light work, even assuming the functional limitations and restrictions included in the ALJ's hypothetical questions. R. 52-53.

*Plaintiff's Claims*

In her motion for summary judgment, Ms. LaPlatte argues that the ALJ erred by improperly relying upon the opinions of non-examining state consultants and arriving at conclusions that were contradicted by examining physicians' treatment

notes. ECF No. 28 at 4. Ms. LaPlatte also contends that the ALJ improperly discounted and gave "too little weight'" to Ms. LaPlatte's testimony regarding her headaches and dizziness. *Id.* Finally, Ms. LaPlatte argues that the hypothetical questions the ALJ posed to the vocational expert did not include any limitations related to her headaches and dizziness, and that the vocational expert erroneously testified that Ms. LaPlatte could work as a Fine Painter, even though that job requires exposure to conditions that she is supposed to avoid. *Id.* at 4-7.

## STANDARD OF REVIEW

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## **DISCUSSION**

### A. **The Five Step Framework**

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. *See* 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. *See* 20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial gainful activity. *Id.* Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." *Id.* Third, the claimant must show he is disabled by proving that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.*[4] Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC), meaning his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.* At step four, the claimant bears the burden of proving that he does not have the RFC to perform past relevant work. *Id.* If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *Id.* If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Id.*

---

[4] A medically determinable physical impairment is one that can be expected to result in death or that has lasted of can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

### B. Is there Substantial Evidence to Support the ALJ's Determination?

A court may reverse an ALJ's decision "only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). I am not convinced that either situation is present here and so there is no basis for reversing the ALJ's decision.

In her motion, Ms. LaPlatte appears to argue that the ALJ erred in assessing her RFC and in determining at Step Four of the five-step inquiry that she can still perform her past relevant work as a bookkeeper. Ms. LaPlatte contends that the ALJ improperly relied upon the opinions of non-examining medical consultants, and did not adequately credit her treatment records which she claims document a history of headaches and label Ms. LaPlatte's diabetes as "uncontrolled." ECF No. 28.

I find that the medical records support the ALJ's determination that Ms. LaPlatte's severe impairments did not render her disabled at Step Three (a finding that Ms. LaPlatte does not dispute). I also find that, contrary to Ms. LaPlatte's arguments, her impairments did not cause functional limitations that would mandate a more restrictive RFC than what the ALJ assessed. The record supports the ALJ's assessment of Ms. LaPlatte's RFC, which captures the light work Ms. LaPlatte is capable of performing, taking into account certain restrictions.

The ALJ properly considered Ms. LaPlatte's diabetes in making his RFC determination. The ALJ acknowledged that certain treatment notes labeled Ms. LaPlatte's diabetes as "uncontrolled;" nevertheless, the ALJ properly evaluated the record as a whole, and in so doing, he determined that Ms. LaPlatte was able "to

manage her condition on her prescribed medication and diet." R. 28 citing Ex. 8F/2; 17F/17; 22F/12; 24F/50, 160).  I find that the record, in its entirety, substantially supports this conclusion because, as the ALJ noted, there is no indication that Ms. LaPlatte "had any instances of diabetic urgencies or emergency room visits" and "[s]he has also not developed any significant complications or symptoms, such as retinopathy, neuropathy, or urinary urgency." R. 28.  *See Tackett v. Comm'r of Soc. Sec.*, No. 21-11852, 2022 WL 2314095, at *2 (11th Cir. June 28, 2022) (ALJ must consider the medical condition as a whole).  Ms. LaPlatte has not presented any evidence for me to disturb that finding.  Nor does she explain what functional limitations would result from a finding of uncontrolled diabetes, or how her RFC should have been adjusted to account it.

The ALJ's decision also establishes that, contrary to Ms. LaPlatte's claim, he accorded significant weight to her testimony about experiencing migraine headaches because the ALJ included them as a severe impairment at Step Two.  The ALJ did this even though the treatment notes barely mention that Ms. LaPlatte suffered from headaches.  *See* R. 28 (ALJ noted "a number of occasions in the record when she denied experiencing any headaches whatsoever" (citing Ex. 11F/9; 17F/7; 22F/43; 24F/62; 26F/22; 32F/67).  Indeed, Plaintiff's motion cites only two instances in the voluminous medical records where Ms. LaPlatte reported experiencing migraines, headaches, or dizziness.  ECF No. 28 at 4 (citing Ex. 11F/25, 13F/3).  For these reasons, I find that there is substantial evidence in the record to support the ALJ's

determination that Ms. LaPlatte's migraine headaches "appear to manifest on an intermittent basis." R. 28.

And, even though the ALJ found Ms. LaPlatte's headaches to be intermittent, contrary to Plaintiff's claim, he still included them in the hypothetical questions he posed to the vocational expert. Ms. LaPlatte contends that the ALJ "did not account for" her history of headaches and dizziness in questioning to the vocational expert. However, the hypothetical questions the ALJ posed to the expert specifically included the restrictions that Ms. LaPlatte "should also avoid concentrated exposure to hazards, including working in high exposed places and proximity to moving vehicles and mechanical parts." R. 26. Given that these restrictions are unrelated to Ms. LaPlatte's cancer, asthma, or diabetes, they were obviously included to address Ms. LaPlatte's claimed dizziness. Therefore, this argument is meritless.[5]

In assessing Ms. LaPlatte's RFC, the ALJ noted that he "found persuasive" the opinions of the non-examining state agency medical consultants who reviewed the medical records and concluded that Ms. LaPlatte could perform light work with certain restrictions. R. 29. Ms. LaPlatte contends that the ALJ erred in relying on their opinions because "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians." ECF No. 28 at 4.

---

[5] Given that the medical records provide substantial evidence to support the rarity of Ms. LaPlatte's headaches, the ALJ was not required to include a hypothetical question to the vocational expert regarding the possibility that Ms. LaPlatte would be frequently absent from work due to migraines. Aside from Ms. LaPlatte's unsupported testimony, there was no evidentiary basis to include that restriction in the hypothetical questions.

Notably, Ms. LaPlatte does not cite anywhere in the record where an examining physician opined that she could not perform light work.

> In any event,
>
> the rules for evaluating medical opinions in social security cases have changed. Previously, the rules placed great emphasis on whether a medical opinion came from a "treating source," and the rules often directed ALJs to give "controlling weight" to a treating source's medical opinion absent good cause. 20 C.F.R. § 404.1527(c)(2). Yet, in March 2017, the Social Security Administration amended its regulations to abrogate the treating physician rule, among other changes.

*Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017)). For claims filed on or after March 27, 2017, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Bonilla,* 2020 WL 9048787, at *4 (quoting § 404.1520c(a)). "All medical opinions are instead evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability [by the record] and consistency of the medical opinion." *Id.*

Based on the changes to the SSA regulations, the standards set forth in *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019), and relied upon by Plaintiff, are no longer applicable. Thus, the ALJ did not err in relying on the opinions of the non-examining consultants, particularly given that the ALJ explained how those opinions were supported by the record and mirrored Ms. LaPlatte's daily activities.

Finally, Plaintiff's motion contends that the vocational expert erred in recommending the job of Fine Painter as one Ms. LaPlatte could perform, since the

DOT's description of that job includes exposure to conditions precluded by the restrictions in her RFC. However, this argument is a red herring because the ALJ only determined that Ms. LaPlatte could resume her past relevant work of bookkeeper.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 28), and **GRANT** Defendant's Motion for Summary Judgment (ECF No. 29).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Donald M. Middlebrooks, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 23rd day of October, 2023, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE